RECEIVED
USDC, WESTERN DISTRICT OF LA
TONY R. MOORE, CLERK
DATE _12 / 12 / 12_

UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF LOUISIANA

LAKE CHARLES DIVISION


TAMMY MANUEL,                         CIVIL ACTION
        Appellant                     NO. 2:11-CV-02046

VERSUS

U.S. COMMISSIONER OF SOCIAL           JUDGE JAMES T. TRIMBLE
SECURITY,                             MAGISTRATE JUDGE JAMES D. KIRK
        Appellee


                REPORT AND RECOMMENDATION OF MAGISTRATE JUDGE

        Tammy Manuel ("Manuel") filed an application for social
security supplemental security income benefits ("SSI") on June 23,
2009, alleging a disability onset date of May 3, 2005 (Tr. p. 110)
due to "back injury, severe nerve damage, arthritis, herniated
disc, deteriorating spine, depression, severe anxiety, spasms in
legs and lower back, swelling in legs and ankles, [and] rods and
screws in back" (Tr. p. 117).[1]  That claim was denied by the Social
Security Administration (Tr. p. 51).

        A de novo hearing was held before an administrative law judge
("ALJ") on October 20, 2010 (Tr. p. 20), at which Manuel appeared
with her attorney and a vocational expert ("VE").  The ALJ found
that, although Manuel suffers from severe status post lumbar
laminectomy, discectomy and fusion at L5-S1 and L4-5 with residual
pain (Tr. p. 9), she has the residual functional capacity to

_____

        [1] Apparently, Manuel filed a prior application for social
security disability insurance benefits which was withdrawn
because she did not qualify for coverage (Tr. p. 31).  Manuel
then filed the current application for SSI benefits.

perform sedentary work except that she cannot climb ladders, ropes or scaffolds, cannot work on uneven or vibrating surfaces, and can only occasionally stoop, kneel, crouch or crawl (Tr. p. 10).  The ALJ concluded that Manuel can perform work which exists in substantial numbers in the national and regional economies, such as interviewer, information clerk, or general office clerk (Tr. pp. 14-15), and therefore was not under a disability as defined in the Social Security Act at any time through the date of the ALJ's decision on January 10, 2011 (Tr. p. 19).

Manuel requested a review of the ALJ's decision, but the Appeals Council declined to review it (Tr. p. 1),[2] and the ALJ's decision became the final decision of the Commissioner of Social Security ("the Commissioner").

Manuel next filed this appeal for judicial review of the Commissioner's final decision.  Manuel raises the following grounds for relief on appeal (Doc. 13):

1. The ALJ denied Manuel due process of law.

2. The ALJ and the Appeals Council failed to fully and fairly develop the facts.

3. The Appeals Council's and ALJ's residual functional capacity findings are not supported by substantial evidence.

4. The ALJ posited a defective hypothetical question to the vocational expert.

The Commissioner filed a brief in response to Manuel's appeal (Doc.

---

[2] The Appeals Council found the ALJ had erred in concluding Manuel had completed high school, but reasoned that the Medical-Vocational Guidelines, Rule 201.27, directed a finding of not disabled, anyway.

14), and Manuel filed a reply (Doc. 17).  Manuel's appeal is now before the court for disposition.

## Eligibility for SSI Benefits

To qualify for SSI benefits, a claimant must file an application and be an "eligible individual" as defined in the Act. 42 U.S.C. § 1381(a).  Eligibility is dependent upon disability, income, and other financial resources.  42 U.S.C. § 1382(a).  To establish disability, plaintiff must demonstrate a medically determinable physical or mental impairment that can be expected to last for a continuous period of not less than 12 months.  Plaintiff must also show that the impairment precludes performance of the work previously done, or any other kind of substantial gainful employment that exists in the national economy.  42 U.S.C. § 1382(a)(3).  The earliest month for which an eligible SSI claimant can receive benefits is the month following the month his application was filed, 20 C.F.R. § 416.335, or the month following the month during the pendency of the application that the claimant meets all the eligibility requirements, 20 C.F.R. § 416.330(a).

## Summary of Pertinent Facts

### 1. Medical Records

Manuel was 41 years old at the time of her October 2010 administrative hearing (Tr. pp. 28, 110), has a twelfth grade education in special education classes (she did not receive a high school diploma) (Tr. pp. 38, 125), and has past relevant work as a bakery clerk at a grocery store (Tr. p. 118).

In October 2004, Manuel was treated for back pain and

3

difficulty walking; she reported that she had fallen at work a month before and injured her back (Tr. p. 590).   X-rays were essentially negative (Tr. pp. 588).

In February 2005, Manuel was involved in a moving vehicle accident and reported low back pain as a result (Tr. p. 592); X-rays of her lumbar spine were negative (Tr. p. 591).

In May 2005, Manuel was treated for low back pain radiating down her left hip and leg which began when she lifted a heavy box from a freezer at work (Tr. p. 165, 260); Manuel reported that her pain worsened when sitting (Tr. p. 165).   Manuel was noted to be 5'5" tall and weight 160 pounds (Tr. p. 165).   An MRI showed a subtle right lateral disc protrusion at L3-4, disc bulging and mild central canal narrowing at L4-5, and left paracentral disc protrusion at L5-S1 with an associated extruded or free disc fragment extending superior to the disc level eccentric to the left, and left neural canal compromise (Tr. p. 166).   X-rays of Manuel's back showed her lumbar spine was intact, had normal alignment, and well-maintained interspaces (Tr. p. 167).   Manuel was diagnosed with low back pain and parethesia in her left leg (Tr. pp. 165, 169, 171).

Dr. Clark Gunderson, an orthopaedic surgeon, made a consultative evaluation in May 2005 and diagnosed a disc herniation at L5-S1 with sequestrated extruded fragment and recommended a microscopic discectomy, which she underwent in June 2005 (Tr. pp. 172-173, 553); that procedure showed Manuel had a herniated nucleus pulposus at L5-S1 (Tr. pp. 553-556).   Manuel underwent a lumbar

4

laminectomy at two levels in June 2005 (Tr. pp. 311, 555-556).

In August 2005, Manuel complained of lower back pain radiating down into both legs, she was unable to sit down, and she had increased pain at night preventing her from sleeping, but she could walk; Dr. Gunderson changed her medications to Vicodin and Elavil (Tr. pp. 268-270). In September, Manuel stated that Binfreeze helped the pain at night (Tr. p. 271).

Manuel had another MRI of her lumbar spine in October 2005, which showed a small broad-based right lateral disc protrusion at L3-4, disc bulging with central canal narrowing and bilateral lateral recess narrowing at L4-5, and postoperative changes at L5-S1 consisting of a large amount of enhancing scar surrounding the S1 nerve root and abutting the left ventral aspect of the thecal sac and residual disc bulging, but no recurrent or residual focal disc protrusion (Tr. pp. 277-278). Manuel was prescribed Vicodin, Neurontin, and Lidocaine patches (Tr. pp. 280-281). Dr. Gunderson stated that Manuel was not at maximum medical improvement and was not doing as well as he had hoped, she continued to have back and primarily left leg pain, and she had about a 10 percent whole body impairment (Tr. p. 287).

In December 2005, Manuel was walking "bent forward," limping on the left, and had positive straight leg raises; Dr. Gunderson put her on "no duty" work status (Tr. p. 289).

In January 2006, Manuel reported that her back felt like it had prior to her first back surgery (Tr. p. 327). In March and April 2006, Manuel stated she was falling due to her left leg

giving way (Tr. p. 327). Dr. Gunderson recommended that Manuel undergo a lumbar myelogram, an enhanced CT, and an EMG of her left leg (Tr. p. 300). The lumbar myelogram showed mild disc bulges at L3-4 through L5-S1 but no obvious disc herniation (Tr. p. 301). The CT scan of Manuel's lumbar spine showed right lateral disc protrusion at L3-4, diffuse disc bulging and facet degeneration causing probable mild central canal stenosis at L4-5, disc bulge at L5-S1 with post surgical changes including a left L5 hemilaminectomy, and there was possible post surgical scarring, minimal disc protrusion, or the bulge could be slightly eccentric to the left (Tr. p. 302). The EMG and nerve conduction studies of Manuel's left leg showed evidence of minimal denervations and the presence of mild L4, L5, and S1 root lesions on the left side (Tr. pp. 304-305). Manuel was prescribed Lortab and Elavil (Tr. p. 307). Dr. Gunderson diagnosed lumbar disk disease (Tr. p. 309) and recommended that Manuel undergo a lumbar laminectomy and fusion with pedicle screws at L5-S1 (Tr. pp. 308, 310).

In March 2006, Manuel had severe pain with muscle spasms at the waistline and reported her left leg had given way and she fell on the floor (Tr. p. 496). Also in March 2006, Manuel was evaluated by Dr. W. Stanley Foster, an orthopaedic and sports medicine doctor, who stated he agreed with Dr. Gunderson's plan to do a decompression and fusion with pedicle screws and fixation (Tr. p. 504). Dr. Foster stated that Manuel would not be at maximum medical improvement until one year after her surgery, at which time she could be rated for a permanent impairment and undergo a

6

functional capacity evaluation (Tr. p. 504).

Manuel was admitted with a diagnosis of recurrent herniated nucleus pulposus at L5-S1 in April 2006 (Tr. pp. 327-738), and underwent a bilateral lumbar laminectomy and discectomy of L5-S1 with removal of a fractured facet at L5-S1, left, a posterior lateral spinal fusion at L5-S1 with autogenous iliac graft, and internal fixation with pedicle screws in May 2006 (Tr. p. 341, 357, 519-520). Manuel reported her pain was better after the surgery, and she was prescribed Lorcet and Soma (Tr. pp. 361-362, 379). Dr. Gunderson noted that Manuel's complaints of leg pain had significantly improved (Tr. p. 367).

In June 2006, Manuel complained again of significant, severe, constant back pain which prevented her from sleeping, but Dr. Gunderson noted she was walking well; Manuel's "no duty" work status was continued (Tr. pp. 368-370).

In October 2006, Dr. Gunderson wrote that Manuel had been weening herself from using a back brace after her surgery and had considerable lower back pain during that time, which was expected (Tr. p. 387). Dr. Gunderson also wrote that Manuel was walking normally, she had no neurologic deficits, x-rays showed no complications, she was currently taking Lorcet, Soma and Xanax, and no diagnostic tests were indicated at that time (Tr. p. 387). Dr. Gunderson stated that Manuel would probably not reach maximum medical improvement for at least twelve months from the date of her last surgery, so it would not be productive to perform a functional capacity evaluation at that time, nor could an MMI (maximum medical

7

improvement) be determined or a permanent impairment rating be assigned yet (Tr. p. 387). Dr. Gunderson further stated that Manuel was not able to perform a functional capacity evaluation at that time (Tr. p. 464).

In February 2007, Manuel had swelling in both ankles as well as constant, moderate low back pain (Tr. p. 424). Dr. Gunderson noted that Manuel was moving normally despite the swelling and tenderness in both ankles (Tr. p. 424). Dr. Gunderson diagnosed a "neuritic[3] type problem" in both ankles and feet, but noted Manuel could walk normally and bend over, and her fusion was solid (Tr. p. 427). Dr. Gunderson noted that Manuel could not work (Tr. p. 427).

In February 2007, Manuel reported having pulled a muscle in her back (Tr. pp. 428-429). An MRI in March 2007 showed a small right lateral disc protrusion at L3-4 with mild right neural canal narrowing, and postoperative changes at L4-5 with residual disc bulging, central canal stenosis, bilateral neural canal narrowing and bilateral lateral recess narrowing, as well as post-operative changes at L5-S1 with disc bulging and bilateral neural canal narrowing (Tr. pp. 430-431). By the end of March 2007, Manuel was again walking bent forward due to increased pain in her lower back and right hip (Tr. p. 433). Dr. Gunderson diagnosed lumbar disc disease and recommended a lumbar epidural steroid injection which

---

[3] Neuritis is an inflammatory or degenerative lesion of a nerve marked especially by pain, sensory disturbances, and impaired or lost reflexes. MEDLINEplus Health Information, Merriam-Webster Medical Dictionary: Neuritis, *available at* http://www.nlm.nih.gov/mplusdictionary.html (a service of the U.S. National Library of Medicine and the National Institutes of Health).

was administered in April 2007 (Tr. pp. 438-443).

Dr. Frank Lopez, a physical medicine and rehabilitation specialist, tested Manuel in April 2007; the nerve conduction study was normal, the reflex test suggested bilateral radiculopathies, and the EMG showed acute denervation[4] signs at L4, L5 and S1 levels bilaterally, consistent with radiculopathies[5] (Tr. pp. 445-446).

In May 2007, Dr. Gunderson recommended a decompressive lumbar laminectomy at L3-L5 with posterolateral fusion at L4-5 with pedicle screws (Tr. pp. 449-453), which Manuel underwent in July 2007 (Tr. p. 536).

In November 2007, Manuel reported that her lower back pain was constant and severe, and she had difficulty walking on concrete for more than twenty minutes (Tr. p. 392). Manuel was prescribed Neurontin (Tr. p. 393). In December 2006, Manuel reported increased low back and leg pain (Tr. p. 397), that her pain increased on doing normal activities, and that nothing decreased her pain (Tr. p. 402). Dr. Gunderson wrote that Manuel had been unable to work the entire time he had been treating her and was still unable to return to work (Tr. p. 401).

In January 2008, Dr. Gunderson wrote that Manuel was unable to

---

[4] Denervate means to deprive of a nerve supply. MEDLINEplus Health Information, Merriam-Webster Medical Dictionary: Denervate, *available at* http://www.nlm.nih.gov/mplusdictionary.html (a service of the U.S. National Library of Medicine and the National Institutes of Health).

[5] Radiculopathy means any pathological condition of the nerve roots. MEDLINEplus Health Information, Merriam-Webster Medical Dictionary: Radiculopathy, *available at* http://www.nlm.nih.gov/mplusdictionary.html (a service of the U.S. National Library of Medicine and the National Institutes of Health).

work (Tr. pp. 470-471). Manuel reported suffering from lower back pain and depression in June through October 2008 to Dr. Lopez (Tr. pp. 185-190).

In March 2009, Manuel complained of low back pain following three back surgeries (Tr. p. 205). Manuel was diagnosed with low back pain, anxiety, and being overweight (169 pounds) (Tr. p. 205). In May 2009, Manuel underwent a bilateral tubal ligation (Tr. pp. 192-198). Lumbar spine x-rays in June 2009 showed Manuel had undergone a lower lumbar fusion and laminectomy from L4-S1, but there was no acute abnormality (Tr. pp. 207, 620).

In July 2009, a psychiatric review technique form was filled out by a non-examining consultant, Joseph Kahler, Ph.D. (Tr. pp. 210-223). Kahler found that Manuel suffers from depression and anxiety, and found she has mild restrictions of daily living, mild difficulties in maintaining social functioning, and mild difficulties in maintaining concentration, persistence, or pace (Tr. p. 220).

Manuel was evaluated by a Dr. Johnny Segura (specialty unknown) in September 2009 (Tr. pp. 231-234). Dr. Segura found Manuel has back and leg pain subsequent to several back surgeries which placed hardware in her spine (Tr. p. 233). Dr. Segura stated that the sequelae of the surgeries include constant leg pain and swelling, anxiety, depression, and insomnia (Tr. p. 233). Dr. Segura noted that Manuel cannot walk further than a block without having to stop, and has decreased strength and range of motion in her back which limit her ability to perform physical labor for an

eight-hour day (Tr. p. 233). Dr. Segura stated that Manuel would have difficultly sitting, standing, walking, and lifting/carrying objects for a full workday without limitations, but should be able to do all of these with structured limitations, and should have few problems with holding a conversation, responding appropriately to questions, and carrying out or remembering instructions (Tr. p. 233). Dr. Segura stated that Manuel may benefit from physical therapy, weight loss, and seeing a chiropractor (Tr. p. 233).

2. October 2010 Administrative Hearing

At the administrative hearing held in October 2010, Manuel testified she was 41 years old and lived in a mobile home with her husband and youngest daughter, who was 19 years old (Tr. p. 27). Manuel testified that she went through the twelfth grade in school and did not have any vocational training (Tr. p. 28). Manuel testified that she last worked on May 3, 2005 as a bakery clerk, a job she held about a year and a half; that is Manuel's only work experience (Tr. pp. 28, 39).

Manuel further testified that she took resource classes in high school and did not graduate, but received a certificate of achievement at the end of the twelfth grade (Tr. p. 38).

Manuel testified that, on May 3, 2005, she picked up a heavy box in the freezer; when she picked it up and turned, a very sharp pain shot down her left leg and her left ankle swelled (Tr. p. 29). Manuel testified that she had undergone three back surgeries, one lumbar laminectomy and two spinal fusions, in June 2005, July 2007, and May 2008 (Tr. p. 29). Manuel testified that, since she last

11

saw Dr. Gunderson in 2009, she has been treated by Dr. Albert Lie at Moss Regional Hospital (Tr. p. 29); Dr. Lie prescribes her medication and checks her blood pressure and weight (Tr. p. 30).

Manuel testified that she sits home and watches TV, visit family and friends, goes to church, occasionally goes to restaurants, works crossword puzzles, and lies down or sits in her recliner with her legs propped up (Tr. pp. 32-33). Manuel drives sometimes (Tr. p. 33). Manuel testified that her husband and two older children clean and cook, and her husband does the shopping (Tr. p. 32). Manuel testified that has problems sleeping, so she takes two Benadryl and a muscle relaxer (Orphenadrine) (Tr. p. 33). Manuel testified that she also takes Neurontin (for nerve damage) and Ibuprofen for pain (Tr. p. 34). Manuel testified that her medications make her very sleepy and dizzy (Tr. p. 35).

Manuel testified that she can walk 10 to 15 feet at a time, stand a few minutes, sit 10 to 15 minutes, and lift ten pounds (Tr. p. 35).

Manuel testified that she had stopped seeing Dr. Lopez and Dr. Gunderson; Dr. Lopez told her she could not work (Tr. p. 38). Manuel testified that no doctor has ever told her she can do any work (Tr. p. 40). Manuel testified that she has been treated by Dr. Lie since then, and sees him sometimes once or twice a month to get her medications (Tr. pp. 38-39).

Manuel testified that her worker's compensation claim settled in 2008, and that all of that money has been spent (Tr. pp. 40-41).

The Vocational Expert ("VE") testified that Manuel's past

12

relevant work as a bakery clerk was medium and unskilled (SVP 2) (Tr. p. 42). The ALJ then posed a hypothetical regarding a person of Manuel's age, education, and work experience who can do sedentary work but cannot climb ladders, ropes or scaffolds, and can occasionally stoop, kneel, crouch or crawl, but cannot work on uneven or vibrating surfaces (Tr. pp. 42-43). The VE testified that such an individual could work as a hand packager (136 jobs in Louisiana, 21,362 jobs in the United States), an interviewer (443 jobs in Louisiana and 32,253 in the United States), an information clerk (1189 jobs in Louisiana and 82,759 jobs in the United States, or a general office clerk (1242 jobs in Louisiana and 95,490 jobs in the United States) (Tr. p. 43).

The ALJ posed a second hypothetical which incorporated the first hypothetical and added the limitation that the claimant must alternate sitting and standing to have a "little stretching break" (Tr. p. 43). The VE testified that such a limitation would not affect the numbers of jobs the claimant could perform (Tr. p. 43).

### ALJ's Findings

To determine disability, the ALJ applied the sequential process outlined in 20 C.F.R. §404.1520(a) and 20 C.F.R. §416.920(a). The sequential process required the ALJ to determine whether Manuel (1) is presently working; (2) has a severe impairment; (3) has an impairment listed in or medically equivalent to those in 20 C.F.R. Pt. 404, Subpt. P, App. 1 ("Appendix 1"); (4) is unable to do the kind of work she did in the past; and (5) can perform any other type of work. If it is determined at any step of

13

that process that a claimant is or is not disabled, the sequential process ends.  A finding that a claimant is disabled or is not disabled at any point in the five-step review is conclusive and terminates the analysis.  Greenspan v. Shalala, 38 F.3d 232, 236 (5th Cir. 1994), cert. den., 914 U.S. 1120, 115 S.Ct. 1984 (1995), citing Lovelace v. Bowen, 813 F.2d 55, 58 (5th Cir.1987).

To be entitled to benefits, an applicant bears the initial burden of showing that she is disabled.  Under the regulations, this means that the claimant bears the burden of proof on the first four steps of the sequential analysis.  Once this initial burden is satisfied, the Commissioner bears the burden of establishing that the claimant is capable of performing work in the national economy. Greenspan, 38 F.3d at 237.

In the case at bar, the ALJ found that Manuel has not engaged in substantial gainful activity since June 19, 2009 (the date of her SSI application) (Tr. p. 13), and that she has severe impairments of status post lumbar laminectomy, discectomy and fusion at L5-S1, L4-5 with residual pain (Tr. p. 9), but that she does not have an impairment or combination of impairments listed in or medically equal to one listed in Appendix 1 (Tr. p. 14).  The ALJ also found that Manuel is unable to perform her past relevant work as a bakery clerk (Tr. p. 18).

At Step No. 5 of the sequential process, the ALJ further found that Manuel has the residual functional capacity to perform the full range of sedentary work except as reduced by her inability to climb any ladders, ropes or scaffolds, cannot work on uneven or

14

vibrating surfaces, and can only occasionally stoop, kneel, crouch or crawl (Tr. p. 10). The ALJ found that Manuel is a younger individual with at least a high school education and no transferable work skills (Tr. p. 18). The ALJ concluded there are a substantial number of jobs in the national economy which Manuel can perform, such as interviewer, information clerk, or general office clerk (Tr. pp. 14-15), and that Manuel was not under a disability as defined in the Social Security Act at any time through the date of the ALJ's decision on January 10, 2011 (Tr. p. 19).

<u>Scope of Review</u>

In considering Social Security appeals such as the one that is presently before the Court, the Court is limited by 42 U.S.C. §405(g) to a determination of whether substantial evidence exists in the record to support the Commissioner's decision and whether there were any prejudicial legal errors. <u>McQueen v. Apfel</u>, 168 F.3d 152, 157 (5th Cir. 1999). For the evidence to be substantial, it must be relevant and sufficient for a reasonable mind to support a conclusion; it must be more than a scintilla but need not be a preponderance. <u>Falco v. Shalala</u>, 27 F.3d 160, 162 (5th Cir. 1994), citing <u>Richardson v. Perales</u>, 402 U.S. 389, 401, 91 S.Ct. 1420, 1427 (1971). Finding substantial evidence does not involve a simple search of the record for isolated bits of evidence which support the Commissioner's decision but must include a scrutiny of the record as a whole. The substantiality of the evidence must take into account whatever in the record fairly detracts from its

15

weight.  Singletary v. Bowen, 798 F.2d 818, 823 (5th Cir. 1986).

A court reviewing the Commissioner's decision may not retry factual issues, reweigh evidence, or substitute its judgment for that of the fact-finder. Fraga v. Bowen, 810 F.2d 1296, 1302 (5th Cir. 1987); Dellolio v. Heckler, 705 F.2d 123, 125 (5th Cir. 1983). The resolution of conflicting evidence and credibility choices is for the Commissioner and the ALJ, rather than the court. Allen v. Schweiker, 642 F.2d 799, 801 (5th Cir. 1981). Also, Anthony v. Sullivan, 954 F.2d 289, 295 (5th Cir. 1992). The court does have authority, however, to set aside factual findings which are not supported by substantial evidence and to correct errors of law. Dellolio, 705 F.2d at 125. But to make a finding that substantial evidence does not exist, a court must conclude that there is a "conspicuous absence of credible choices" or "no contrary medical evidence." Johnson v. Bowen, 864 F.2d 340 (5th Cir. 1988); Dellolio, 705 F.2d at 125.

Law and Analysis

Issue 1 - Due Process

First, Manuel claims the ALJ denied her due process of law by ignoring testimony and evidence as to her education. Manuel claims the ALJ erred in finding she had "at least a high school education" after she testified (Tr. pp. 37-38), and the State disability report showed (Tr. p. 235), that Manuel attended special education classes and did not graduate from high school, but received a certificate of achievement instead.

The ALJ stated in her decision that Manuel had "at least a

16

high school education," and the state disability determinations psychologist found no mental limitations (Tr. pp. 17-18). The state disability determinations psychologist stated in his psychiatric review technique form that he considered evidence from Manuel's prior disability claim to determine that she had only mild functional limitations attributable to mental disorders, and that the previous record stated Manuel was "noted to have completed high school" (Tr. p. 222). Manuel complains that evidence from her prior disability claim is not in the current administrative record and reliance on that evidence violates her right to due process.

Manuel testified at her administrative hearing that she took resource (special education) classes in high school and did not graduate, but received a certificate of achievement at the end of the twelfth grade (Tr. p. 38). The Appeals Council stated in its notice that the ALJ had erred in concluding Manuel had completed high school (Tr. p. 2).

The ALJ clearly erred in concluding Manuel had an education of "at least high school." Since the VE based her responses on a defective hypothetical which involved a claimant with at least a high school education, the VE's testimony does not constitute substantial evidence to support the ALJ's conclusions.

Since the ALJ's/Commissioner's conclusions are not supported by substantial evidence, their decision is incorrect as a matter of law. However, this does not entitle Manuel to a decision in her favor based upon the existing record. The record is simply inconclusive as to whether there are any jobs existing in

17

sufficient numbers in the national economy which Manuel can perform, given her true impairments. Therefore, Manuel's case should be remanded to the Commissioner for further proceedings.

Issue 2 - Duty to Develop the Record

Next, Manuel contends the ALJ and the Appeals Council failed to fully and fairly develop the facts in the record as to Manuel's education level and intelligence. Manuel contends that her testimony, that she was in special education in high school and only earned a certificate of achievement when the completed the twelfth grade, raised a question as to her true educational level and intelligence level which the ALJ had a duty to investigate.

An administrative law judge has a duty to fully and fairly develop the facts relative to a claim for disability benefits. Carey v. Apfel, 230 F.3d 131, 142 (5th Cir. 2000), citing Brock v. Chater, 84 F.3d 726 (5th Cir.1996), and Kane v. Heckler, 731 F.2d 1216 (5th Cir. 1984). The Court will not reverse the decision of an ALJ for failure to fully and fairly develop the record unless the claimant shows that he or she was prejudiced by the ALJ's failure. Carey, 230 F.3d at 142, citing Brock, 84 F.3d at 728, and Kane, 731 F.2d at 1220. To establish prejudice, a claimant must demonstrate that he or she could and would have adduced evidence that might have altered the result. Carey, 230 F.3d at 142, citing Kane, 731 F.2d at 1220.

As stated above, the ALJ's mistake as to Manuel's educational level resulted in a defective hypothetical to the VE; pursuant to that defective hypothetical, the ALJ found there were jobs which

18

Manuel could perform.   Therefore, Manuel has shown she was
prejudiced by the ALJ's error.

Moreover, attached to Manuel's brief (Doc. 13) is a
psychological evaluation performed in November 2011 by psychologist
Jerry L. Whiteman, Ph.D., who administered the Wechsler Adult
Intelligence Scale IV (WAIS-IV) and did a mental status evaluation
with behavioral observations.  The WAIS-IV IQ test shows Manuel has
a full scale IQ of 69, which the psychologist states is on the cusp
between mild mental retardation and borderline intelligence.   The
psychologist also found that Manuel has severe stressors due to
pain, as well as a pain disorder caused by back pain, and that her
pain limits her ability to address the tasks of daily living
without assistance (Doc. 13).  The psychologist further found that
Manuel has marked limitations in the ability to carry out detailed
instructions, the ability to make judgments on simple work-related
decisions, the ability to respond appropriately to work pressures
in a usual work setting, and the ability to respond appropriately
to changes in a routine work setting (Doc. 13).   Therefore, there
is an issue as to whether Manuel meets Listing 12.05, and Manuel's
mental limitations should have been considered in determining her
residual functional capacity and ability to work.

Since this case must be remanded to the Commissioner for
further proceedings because Manuel does not have "at least a high
school education," the ALJ should fully develop the record to
determine Manuel's true educational and intelligence levels in
order to determine whether Manuel meets Listing 12.05 or, if not,

whether there are any jobs Manuel can perform.

Issue 3 - Residual Functional Capacity

Next, Manuel contends the ALJ's and the Appeals Council's residual functional capacity findings are not supported by substantial evidence.

Since, as stated above, the ALJ erred in failing to develop the record as to Manuel's true educational level and intelligence level and erred in finding she has a least a high school education, the ALJ's findings as to Manuel's residual functional capacity are not supported by substantial evidence. Likewise erroneous, for the same reason, is the Appeals Council's conclusion that the Medical-Vocational Guidelines direct a finding of not disabled. Moreover, it is noted that the Medical-Vocational Guidelines are inapplicable where the claimant suffers from a mental impairment. Section200.22(e) of 20 C.F.R. Pt. 404, Subpt. P, App. 2; Broussard v. Bowen, 828 F.2d 310, 313 (5th Cir. 1987); Fields v. Bowen, 805 F.2d 1168, 1170 (5th Cir. 1986); Rivers v. Schweiker, 684 F.2d 1144, 1152 (5th Cir. 1982). Since both the ALJ's and the Appeals Council's findings as to Manuel's education and residual functional ability are based on errors of fact, their conclusions that Manuel is not disabled are not supported by substantial evidence.

Since substantial evidence does not support the ALJ's or Appeals Council's findings as to Manuel's residual functional capacity, Manuel's residual functional capacity should be re-evaluated on remand.

Issue 4 - Hypothetical Question to VE

Finally Manuel contends the ALJ posited a defective hypothetical question to the vocational expert. As stated above, the ALJ's error as to Manuel's education, and lack of findings as to her intelligence level and true residual functional capacity, rendered the hypothetical question to the VE defective. Therefore, the VE's testimony does not constitute substantial evidence to support the ALJ's/Commissioner's decision.

Conclusion

Based on the foregoing discussion, IT IS RECOMMENDED that Manuel's appeal be GRANTED, the final decision of the Commissioner be VACATED and Manuel'S case be REMANDED to the Commissioner for further proceedings.

Under the provisions of 28 U.S.C. § 636(b)(1)(c) and Fed.R.Civ.P. 72(b), the parties have **fourteen (14) business days** from service of this Report and Recommendation to file specific, written objections with the Clerk of Court. A party may respond to another party's objections within **fourteen (14) days** after being served with a copy thereof. A courtesy copy of any objection or response or request for extension of time shall be furnished to the District Judge at the time of filing. Timely objections will be considered by the district judge before he makes a final ruling.

**A PARTY'S FAILURE TO FILE WRITTEN OBJECTIONS TO THE PROPOSED FINDINGS, CONCLUSIONS AND RECOMMENDATIONS CONTAINED IN THIS REPORT WITHIN fourteen(14) BUSINESS DAYS FROM THE DATE OF ITS SERVICE SHALL BAR AN AGGRIEVED PARTY, EXCEPT ON GROUNDS OF PLAIN ERROR, FROM ATTACKING ON APPEAL THE UNOBJECTED-TO PROPOSED FACTUAL**

**FINDINGS AND LEGAL CONCLUSIONS ACCEPTED BY THE DISTRICT JUDGE.**

THUS DONE AND SIGNED at Alexandria, Louisiana, on this _____ day of December 2012.

JAMES D. KIRK
UNITED STATES MAGISTRATE JUDGE

22